[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2006
THOMAS K. KAHN
CLERK

No. 04-12056

D. C. Docket No. 03-00498-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEBRA B. WOODARD,
a. k. a. Debra Beverly,
JOHN D. WOODARD,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 8, 2006)**

Before EDMONDSON, Chief Judge, KRAVITCH, Circuit Judge, and
MIDDLEBROOKS,* District Judge.

_____

*Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

Defendants John and Debra Woodard were convicted of 37 counts of mail fraud, in violation of 18 U.S.C. sections 1341 and 1346, and one count of conspiracy to commit mail fraud and deprivation of honest services, in violation of 18 U.S.C. sections 371, 1341, and 1346. Defendants challenge their convictions and sentences. Finding no reversible error, we affirm.

## I. BACKGROUND

Evidence showed that between 1992 and 2001, spouses John and Debra Woodard (collectively "Defendants") used the U.S. mail to carry out a scheme to defraud the City of Atlanta, Georgia (the "City") and the rightful owners of money and property that was held in the custody of the Atlanta Police Department (the "APD"). John Woodard was employed by the City as a police officer; he was the Captain in charge of administering APD's Property Control Unit ( the "PCU") from 1989 to 1992. The PCU maintains custody and control of property seized by the APD, including seized money. Upon presenting proper identification and

paperwork, property owners are permitted to reclaim their seized property. Unclaimed money is deposited into the City's general fund after a certain time.

Around the time John stopped supervising the PCU, evidence indicates Defendants formed a company known as "R.A.P. Limited" or "R.A.P. Inc." ("RAP").[1] RAP charged clients a fee -- often fifty percent of the reclaimed funds -- to reclaim their money from the APD. Debra was RAP's chief executive. After RAP was formed, John continued to work as an officer of the APD but in a different capacity, outside the PCU.

To facilitate its reclamation business, RAP would contact those persons with unclaimed money held by the APD. Some evidence indicates that RAP representatives misled prospective clients that RAP provided the only means through which they could reclaim their money. Clients would execute a limited power of attorney, empowering a RAP employee to act as an intermediary between the client and the APD. RAP would then reclaim the money from the APD and pay to the client the client's share.

Evidence showed that RAP relied on confidential APD information obtained by John Woodard to locate and to contact potential clients. Evidence also showed that RAP sometimes used forged powers of attorney to obtain money

---

[1] "R.A.P." apparently stands for "Recovery of Assets and Property."

held by the APD. All of this money was deposited into Debra Woodard's personal accounts or RAP accounts, and some money was never distributed to its rightful owners. Evidence also showed these things:

(1) RAP "Investigator" Lawrence Yarbrough forged signatures on some powers of attorney for persons he was unable to locate or persons who were deceased. Debra Woodard knew about these forgeries.

(2) Debra Woodard and another RAP employee presented forged powers of attorney to the APD to reclaim property.

(3) John Woodard signed Debra's name as notary on fraudulent powers of attorney and delivered those powers of attorney along with other papers to the APD for processing.

(4) Defendants took steps to conceal their connection with each other, and John took steps to hinder the APD's investigation into RAP.

(5) Confidential documents and copies of files from the APD's investigation of RAP were recovered from Defendants' home.

In total, the APD issued $710,262 to RAP. The 37 counts of mail fraud for which Defendants were convicted involved approximately $33,900 of this total. RAP returned $43,243 to the APD.

The jury found Defendants guilty of all counts. At sentencing, the district court calculated the total loss amount to be $710,262 and enhanced Defendants' sentences in accordance with U.S. Sentencing Guidelines section 2F1.1(b)(1)(K) (2000) (recommending 10-point increase if loss amount was greater than $500,000

but less than $800,000). John and Debra Woodard were sentenced to serve 36 months' imprisonment and 24 months' imprisonment on each count, respectively, to be served concurrently. The district court further sentenced Defendants to pay $333,504 in restitution, jointly and severally, to the City. This figure, according to the district court, takes into account that some of RAP's clients received from RAP fifty percent of the money owed to them by the City.

## II. DISCUSSION

Defendants raise three main enumerations of error. First, Defendants challenge their convictions by arguing that the district court failed to instruct the jury properly. Second, Defendants allege the district court erred by failing to direct a judgment of acquittal on the conspiracy charge. And third, Defendants challenge their sentences by alleging the district court erred in calculating the total loss amount and in ordering that restitution be paid to the City.

A.  Jury Instructions

Count 1 of the indictment charged Defendants with conspiracy to commit mail fraud.  A conspiracy is an agreement between two or more persons to accomplish an unlawful plan.  18 U.S.C. § 371; United States v. Parker, 839 F.2d 1473, 1477 (11th Cir. 1988).  18 U.S.C. section 1341 prohibits the use of the mails to implement a scheme or artifice to defraud.  18 U.S.C. section 1346 defines "scheme or artifice to defraud" to include schemes to deprive another of the intangible right of honest services.   Defendants contend the district court, when it instructed the jury on the conspiracy charge, erred in these ways: (1) by instructing the jury that they could convict Defendants of conspiracy to commit either mail fraud or deprivation of honest services when the indictment charged Defendants with conspiracy to commit both; (2) by failing to give properly the Pinkerton instruction; and (3) by failing to give a multiple conspiracy instruction.

We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the objecting party's prejudice.  United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001).  If the instructions accurately state the law, the trial judge has wide discretion to determine their style and wording. United States v. Kenney, 185 F.3d 1217, 1222-23 (11th Cir. 1999).

6

1.  Disjunctive conspiracy instruction.  Defendants were charged with committing a single conspiracy with two unlawful objects: using the mails to defraud the City and its citizens of (1) money and property and (2) John Woodard's honest services.  Defendants contend that the district court erred when it instructed the jury that Defendants could be convicted of conspiracy if the Government proved beyond a reasonable doubt that Defendants intended to achieve at least one of the objects and the jury unanimously agreed on which of the objects Defendants intended to achieve.[2]

Defendants assert that this excuses the Government from having to prove each and every element of the offense.  We disagree.  We have written that "[a] guilty verdict in a multi-object conspiracy will be upheld if the evidence is sufficient to support a conviction of any of the alleged objects."  United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997); see also United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000) ("[W]here an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on

---

[2]The district court gave this instruction:

> It is not necessary for the Government to prove that the defendants intended [the] scheme to defraud to achieve both of the objects, it is sufficient if the Government proves beyond a reasonable doubt that the defendants intended the scheme to achieve one of the charged objects.  But in that event, in order to return a verdict of guilty, you must unanimously agree as to which of the two objects the defendants intended to achieve.

proof of only one of the means, and accordingly the jury instruction may properly

be framed in the disjunctive.").

By the way, the district court's unanimity instruction was virtually a

verbatim recitation of Eleventh Circuit Criminal Pattern Jury Instruction 13.2.

The jury returned a general verdict finding Defendants guilty. Evidence at trial

was sufficient to show that Defendants knowingly agreed to and knowingly acted

in an effort to accomplish the conspiracy's objects.

2. Pinkerton instruction. Defendants contend the district court erred when

it instructed the jury that, if the jury found a defendant guilty of conspiracy, then

the jury could then find that defendant guilty of the substantive mail fraud offenses

based on the acts of a co-conspirator.[3] In Pinkerton v. United States, 66 S.Ct.

---

[3]The district court gave this instruction:

In some instances a conspirator may be held responsible under the law for a substantive offense in which he or she had no direct or personal participation if that offense was committed by other members of the conspiracy during the course of the conspiracy, and in furtherance of its object . . . . In this case with regard to counts 2 through 38, and insofar as the defendants Debra Woodard and John Woodard are concerned, if you have first found either of those defendants guilty of the conspiracy offense as charged in count 1 of the indictment, you may also find such defendant guilty of the offense charged in counts 2 through 38 even though such defendant did not personally participate in that offense if you find beyond a reasonable doubt, first, that the offense charged in such count was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects; second, that the defendant under consideration was a knowing and willful member of the conspiracy at the time of the commission of the offense; and third, that the commission of the offense by a co-conspirator was a reasonably foreseeable consequence of the conspiracy.

8

1180 (1946), the Supreme Court concluded that a defendant may be convicted of a substantive offense based on the acts of co-conspirators. Defendants assert that the court's Pinkerton instruction, when combined with the disjunctive conspiracy instruction discussed above, removed the intent element from the substantive mail fraud offenses. Because Defendants did not raise this objection below, we review for plain error. Hansen, 262 F.3d at 1248.

Criminal intent to commit substantive offenses may be established by the formation of the conspiracy. Pinkerton, 66 S.Ct. at 1184. But Defendants argue that intent to commit the 37 substantive mail fraud acts was not established if the jury concluded in its general verdict that the evidence supported only one object of the conspiracy. Even if the jury so found, Defendants' argument lacks merit.

In its general verdict, the jury found that both Defendants were part of a conspiracy to use the mails to defraud the City and its citizens of (1) money and property, or (2) John Woodard's honest services, or (3) both. And in convicting Defendants on the substantive counts, the jury also found that at least one Defendant used the mails to carry out the scheme. Because the indictment described the substantive counts of mail fraud as using the mail to defraud the City and its citizens of money and property and John Woodard's honest services, we are not persuaded that the intent necessary to commit mail fraud to achieve either

9

object is plainly insufficient to sustain Defendants' conviction for the substantive acts. The district court therefore did not plainly err in giving the Pinkerton instruction.[4]

3. Multiple conspiracy instruction. John Woodard contends the evidence supports a separate conspiracy between only Debra Woodard and Lawrence Yarbrough, and the district court erred by not instructing the jury on the possibility of multiple conspiracies. Because John Woodard raises this issue for the first time on appeal, we review for plain error only. Hansen, 262 F.3d at 1248. "Generally, a multiple conspiracy instruction is required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." (internal quotation marks and emphasis omitted.) United States v. Calderon, 127 F.3d 1314, 1328 (11th Cir. 1997) (original emphasis omitted). The instruction is not required if the evidence only supports finding the single conspiracy charged. Id. at 1329.

---

[4]John Woodard's further argument -- that the district court erred by failing to charge the jury that a conspirator is only liable for crimes that are a reasonably foreseeable consequence of the conspiracy -- is also without merit. The district court properly instructed the jury on reasonable foreseeability.

In this case, the evidence supports only a single conspiracy. The district court correctly instructed the jury that, to convict, it must find that each defendant joined in the conspiracy. The evidence demonstrated a common purpose, a connection between the conspiracy's objects, and an interdependence among the alleged co-conspirators sufficient to show a single conspiracy. See United States v. Chandler, 388 F.3d 796, 805-13 (11th Cir. 2004) (concluding that common purpose, connection between multiple objects, and interdependence among co-conspirators demonstrates single conspiracy). Because John Woodard's acts facilitated the entire scheme, a single conspiracy was shown. See id. at 811 ("If a defendant's actions . . . facilitated the venture as a whole, then a single conspiracy is shown." (citation and internal marks omitted)). The district court accordingly did not err when it failed to instruct the jury on multiple conspiracies.[5]

---

[5] On appeal, John Woodard also contends for the first time that the district court erred by failing to instruct the jury that repeated acts do not constitute a conspiracy. For those reasons stated above, we think the district court correctly instructed the jury and did not misstate the law. The district court therefore did not plainly err by failing to give this instruction.

11

B.  Motion for Judgment of Acquittal

Both Defendants moved for a judgment of acquittal on the conspiracy charge, arguing that deprivation of honest services could not be an object of the conspiracy.[6]  We review de novo the district court's denial of Defendants' motions for judgment of acquittal.  United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005).  We must determine whether, based on the evidence presented in the light most favorable to the Government, a reasonable jury could have found Defendants guilty beyond a reasonable doubt.  United States v. Ellington, 348 F.3d 984, 989 (11th Cir. 2003).

1.  John Woodard's motion for judgment of acquittal.  John Woodard argued in his Rule 29 motion that RAP's business did not violate the law and that therefore his involvement, no matter how direct or remote, could not have violated the law.  But as a public official,[7] John Woodard owed a fiduciary duty to the public to make governmental decisions in the public's best interest; and John's

---

[6]Defendants moved for judgment of acquittal at the close of the Government's case and renewed their motion at the close of all the evidence in accordance with Fed. R. Crim. P. 29(a).

[7]Section 1346 adheres most often in cases involving public officials.  See United States v. deVegter, 198 F.3d 1324, 1327-28 (11th Cir. 1999) ("[T]he paradigm case of honest services fraud is the bribery of a public official . . . .").  It is undisputed that John Woodard was a public official who owed a duty to the public to act in the public's best interest and to provide the City and its citizens his honest services.

12

misuse of his office for private gain constitutes fraud.  United States v. deVegter, 198 F.3d 1324, 1328 (11th Cir. 1999).  Even if RAP's business was sometimes law abiding, when the Government can prove the elements of the mail fraud conspiracy offense, John Woodard's conspiracy to benefit from an undisclosed conflict of interest will support his conviction for conspiracy to deprive the public of his honest services.  See id. (citing and quoting United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997) ("If the official . . . secretly makes his decision based on his own personal interests -- as when an official . . . personally benefits from an undisclosed conflict of interest -- the official has defrauded the public of his honest services.")).

Sufficient evidence existed for a reasonable jury to find that John Woodard conspired to deprive the City of his honest services by his helping to conceive RAP's business and then using his position in the APD for personal financial gain.[8]  Some evidence showed that John Woodard -- while on duty with the APD -- delivered fraudulent documents to the APD on RAP's behalf, used APD

---

[8]By the way, APD regulations should have resolved any questions John Woodard may have had about his duty to avoid conflicts of interest.  APD regulations provided that an employee shall not directly or indirectly invest in private transactions "which create or give the appearance of creating a conflict of interest with his/her official duties."  Nor shall an APD employee be or become interested in any manner "in any business dealing with the City."  APD regulations also provided that employees should treat as confidential the "business, activities, files, and reports of the department."

13

resources to obtain information (including confidential information and internal investigative files) for RAP, enabled RAP to engage in private transactions with the City that created a conflict of interest, and acted with Debra Woodard to conceal his connection to RAP. And although John Woodard, at trial, disputed his connection to RAP, a defendant's testimony -- if disbelieved by the jury -- may be considered substantive evidence of guilt. See United States v. Williams, 390 F.3d 1319, 1326 (11th Cir. 2004).

2. Debra Woodard's motion for judgment of acquittal. Debra Woodard contends she is entitled to acquittal because, as a private citizen, she owed no duty of honest services to the City or its citizens. We have previously distinguished private-sector honest services fraud from public-sector honest services fraud. See deVegter, 198 F.3d at 1327-29. But, unlike in deVegter, this case involves public-sector honest services fraud.

Conspiracy to commit honest services mail fraud requires only one co-conspirator to be encumbered by a duty to provide honest services. We have concluded that private citizens, acting in conjunction with a public official, may be adjudged guilty of violating section 1346 if the official colluded with the citizen to use his public office to serve the citizen's interests at the public's expense. See Lopez-Lukis, 102 F.3d at 1169-70. And we conclude that a reasonable jury could

find that Debra Woodard conspired to deprive the City and its citizens of John Woodard's honest services.

C. Amount of Loss & Restitution.

The district court concluded that the City was an identifiable victim of Defendants' scheme and based Defendants' sentences on a total loss amount of $710,262. Because this loss amount exceeds $500,000, the district court enhanced Defendants' base offense level 10 points in accordance with U.S. Sentencing Guidelines section 2F1.1(b)(1)(K) (2000). Defendants contend the proper loss amount is around $33,900, which is the amount of loss identified in the individual mail fraud counts.

We review the district court's loss determination for clear error, United States v. Cabrera, 172 F.3d 1287, 1292 (11th Cir. 1999), and review questions of law under the sentencing guidelines de novo, United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). For sentencing purposes, the loss amount does not need to be precise and may only be a reasonable estimate of the loss based on the available information. U.S.S.G. § 2B1.1, cmt. n.3 (2000). When considering the loss caused by fraudulent conduct, the nature of the individual scheme must

15

determine the correct way to measure the loss. United States v. Orton, 73 F.3d 331, 333 (11th Cir. 1996).

The district court determined that RAP's scheme was inherently fraudulent and that "unitary criminal activity was equally undertaken by both defendants." Although RAP may have paid an unspecified amount of its collections to its clients, the correct loss amount should be based on the proceeds from Defendants' fraudulent conduct -- in this case, the deprivation of John Woodard's honest services. Every dollar RAP took from the City resulted from depriving the City of John Woodard's honest services.

The district court did err in calculating the total loss amount by not deducting from the $710,262 the $43,243 RAP returned to the APD. But this error was harmless because the adjusted total loss amount -- $667,219 -- still exceeds the $500,000 threshold for upwardly adjusting Defendants' base offense level.

Debra Woodard further argues that the district court erred in awarding $333,504 in restitution to the City when there are other identifiable victims. A person convicted of a crime against property under Title 18 is required to make full restitution to his victim. 18 U.S.C. § 3663A. The district court concluded that the City was a victim of Defendants' fraudulent scheme and that it would be impractical to separate loss amounts for individual claimants for restitution

16

purposes. Although the City had no property interest in the money it paid to RAP, the City was responsible for that money, and the City is required to repay the money to its rightful owners. The district court did not err in ordering restitution to the City.[9]

## III. CONCLUSION

For the foregoing reasons, Defendants' conviction and sentences are

**AFFIRMED.**

---

[9]Debra Woodard separately alleges the district court committed <u>Booker</u> error when the court based its sentence on a total loss amount that was neither admitted by Debra nor determined by the jury. But at the sentencing hearing -- which occurred after <u>Booker</u> -- the district court considered the guidelines as advisory. We have concluded that a sentencing court does not err when it enhances a sentence under an advisory guidelines scheme based on facts found by a preponderance of the evidence. <u>United States v. Chau</u>, 426 F.3d 1318, 1323-24 (11th Cir. 2005). Debra Woodard's argument, therefore, is without merit.