[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 13, 2006
THOMAS K. KAHN
CLERK

No. 06-11230
Non-Argument Calendar

_____

D. C. Docket No. 05-00184-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL MAURICE WHELAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(October 13, 2006)**

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Michael Maurice Whelan ("Whelan") appeals his 151-month sentence for

possession of a listed chemical with intent to manufacture methamphetamine ("meth"), in violation of 21 U.S.C. § 841(c)(1). Whelan raises four issues on appeal. Whelan challenges (1) the standard of proof applied at sentencing, (2) the district court's drug quantity calculation, (3) the enhancement of his sentence for creating a substantial risk of harm to human life or the environment, and (4) the reasonableness of his ultimate sentence.

First, Whelan argues that the district court incorrectly believed that it did not have the discretion to apply the clear and convincing standard of proof to the drug quantity calculation. Whelan contends that *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), did not address the standard of proof applicable at sentencing, and, even if due process does not require a higher standard of proof, district courts have the discretion to apply a higher standard.

We have stated after *Booker* that the preponderance of the evidence standard applies to factual determinations made at sentencing. *United States v. Woodard*, ___ F.3d ___ (11th Cir. Aug. 8, 2006) (noting that sentencing court does not err when it enhances a sentence under an advisory guidelines scheme based on facts found by a preponderance of the evidence); *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir.), *cert. denied*, 125 S. Ct. 2935 (2005) ("When a defendant objects to a factual finding that is used in calculating his guideline sentence, such

2

as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence.").

In light of the cases cited above, we conclude that the district court properly applied the preponderance of the evidence standard to the facts found at sentencing.

Second, Whelan argues that the district court erred by failing to estimate cautiously the drug quantity of 106.4 grams of pseudoephedrine attributed to him. Whelan notes that some of the drugs seized from him did not have the pseudoephedrine doses labeled and the district court accepted as evidence (1) the government's unauthenticated document from a government website indicating the pseudoephedrine content of 12-hour pseudoephedrine tablets and (2) testimony that an officer obtained information about other pills from a poison control center. Whelan also notes that the court refused to order the government to release the pills for testing. Finally, Whelan notes that he presented expert testimony that the quality-control standards for pharmaceutical manufacturers allow for a margin of error from the doses marked on the packaging.

"We review the sentencing court's findings of drug quantity for clear error." *United States v. Smith*, 240 F.3d 927, 930-31 (11th Cir. 2001). "Although sentencing may be based on fair, accurate, and conservative estimates of the

3

quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). District courts may consider reliable hearsay evidence at sentencing. *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001). We will defer to the district court's credibility determinations of witnesses testifying at sentencing. *See United States v. Glinton*, 154 F.3d 1245, 1259 (11th Cir. 1998). Finally, we review a district court's denial of a motion to compel discovery for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

On appeal, Whelan only challenges the drug quantity calculation of 37.2 grams of pseudoephedrine obtained from the search of his vehicle, not the 69.2 grams of pseudoephedrine found in the search of his apartment. The district court's drug quantity calculation was a conservative and fair estimate based on the pills' resemblance in color, shape, size and packaging to other pills possessed by Whelan that were labeled. *Zapata*, 139 F.3d at 1359. Moreover, considering that Whelan waited until after the court had made its drug quantity findings to move to compel the release of the drugs for testing, the district court did not abuse its discretion in denying the motion. *Holloman*, 443 F.3d at 837. Finally, even accepting Whelan's expert's theory at sentencing that drugs may vary in their

4

concentration level from the packaging's labels by as much as 10%, this would not change Whelan's base offense level from 32. Thus, we conclude that the district court did not err in its drug quantity calculation.

Third, Whelan argues that the district court erroneously enhanced his sentence for creating a substantial risk of harm to human life or the environment based on only two of the four guideline factors under U.S.S.G. § 2D1.1, comment. (n.20): the quantity of chemicals and manner in which they were stored and the location of the laboratory and number of human lives placed at risk. Whelan contends that (1) there was no unusually large quantity of hazardous materials found in his apartment, (2) his expert testified that red phosphorous was not a real danger, (3) the evidence of ether in the apartment was unclear, and (4) there was no evidence of the scope or duration of the manufacturing process or the improper disposal of materials.

We review factual findings for clear error and the application of the Sentencing Guidelines to those facts *de novo*. *United States v. Washington*, 434 F.3d 1265, 1267 (11th Cir. 2005). The guidelines provide for a three-level enhancement "[i]f the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to (I) human life . . . or (II) the environment." U.S.S.G. § 2D1.1(b)(6)(B). The commentary to this

section specifies:

> In determining, for purposes of subsection (b)(6)(B) or (C), whether the offense created a substantial risk of harm to human life or the environment, the court shall include consideration of the following factors:
>
> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (iii) The duration of the offense, and the extent of the manufacturing operation.
>
> (iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.

*Id.*., comment. (n.20).

First, the record demonstrates that the district court explicitly considered all of these factors in finding that the enhancement applied by noting that for subsection (i), there was red phosphorous and ether present and for subsection (ii) that a number of Whelan's containers only had plastic wrap sealing them, and that this was insufficient to keep the odors from escaping. For subsection (iii), the district court found that the drug manufacturing process had taken place and was ongoing, and for subsection (iv) that the manufacturing process was occurring in

6

an apartment building with people around. Next, the evidence in the record supports the district court's factual findings in light of Investigator David Smith's testimony as well as Officer Wayne Goolsby's testimony. *Washington*, 434 F.3d at 1267.

Finally, Whelan argues that his sentence is unreasonable because it is greater than necessary to achieve the purposes of sentencing. Whelan first notes that the drug quantity determination based on a preponderance of the evidence increased the guideline range by more than 50 months. Whelan also argues that the emphasis on quantity in the sentencing guidelines does not adequately focus on the defendant's role in the offense and exacerbates sentencing disparities. He contends that a sentence below the guidelines was warranted here because he committed the offense to obtain meth for his personal addiction, drug treatment will provide the necessary deterrence and punishment, and a lesser sentence would communicate the seriousness of the offense. Whelan also challenges the district court's explanation of his sentence as inadequate.

We review a defendant's ultimate sentence for reasonableness. *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005). Among the factors that a district court should consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and

protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1)-(7). "[N]othing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). While a sentence within the advisory guideline range is not *per se* reasonable, it usually will be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

We conclude from the record that Whelan's 151-month sentence is reasonable. First, the district court sentenced Whelan at the bottom of the guideline range. *Talley*, 431 F.3d at 788. The district court also considered Whelan's personal history and characteristics of being a drug addict, but recognized the nature of the offense and the need for adequate deterrence and punishment in commenting that "[t]he manufacture of methamphetamine is a dangerous, dangerous business. And your decision to do that to feed your addiction was a very serious one." Although the district court did not explicitly mention the § 3553(a) factors, it stated that it had considered the statutory purposes of sentencing and adequately explained the sentence contrary to Whelan's argument. *Scott*, 426 F.3d at 1330.

8

With respect to Whelan's argument regarding the drug quantity, we already have concluded that the factual finding was not clearly erroneous. With respect to his general argument regarding the guidelines' focus on drug quantity, we have no authority to change Congress's judgment to punish crack cocaine offenders 100 times more severely than powder cocaine violators. *United States v. Williams*, ___ F.3d ___ , No. 05-13205 (11th Cir. July 21, 2006). Thus, we similarly lack the authority to override Congress's emphasis on drug quantity in the guidelines.

For the above-stated reasons, we affirm Whelan's sentence.

**AFFIRMED.**