[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2010
JOHN LEY
CLERK

_____

No. 09-13697
Non-Argument Calendar

_____

D. C. Docket No. 09-20095-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NELSON MARTINEZ ALMEIDA,
JULIET TOLEDO DUARTES,
RICARDO MOJENA VELAZQUEZ,
RUDIVALDO MOJENA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 20, 2010)

Before BLACK, HULL and MARTIN, Circuit Judges.

PER CURIAM:

After a jury trial, Defendants Nelson Martinez Almeida, Rudivaldo Mojena, Juliet Toledo Duartes, and Ricardo Mojena Velazquez appeal their convictions arising out of their participation in a conspiracy to smuggle aliens into the United States. After review, we affirm.

## I. BACKGROUND

The defendants participated in an operation to smuggle Cuban nationals into the United States on June 15, 2008. In April 2008, the conspirators rented a house with a dock along the coast of Fort Myers, Florida. On the night of June 14, 2008, the conspirators drove a boat to Cuba, where they picked up approximately 27 Cuban nationals. On the return trip, the first boat was met by a second boat, which refueled the first boat and took some of the Cuban nationals. In the early morning hours of June 15, the two boats drove back to the Fort Myers house. At the house, roughly 19 Cuban nationals who had prepaid a smuggling fee were released to family members. The conspirators called the remaining eight Cuban nationals' relatives in the United States and threatened to return them to Cuba unless the relatives paid a smuggling fee.

Unfortunately for the defendants, one of the relatives they called was Luis Angel Lopez, who (unbeknownst to the conspirators) is a U.S. Customs and Border

Protection officer. Working with Immigration and Customs Enforcement ("ICE"), Lopez arranged to meet one of the conspirators, Niovel Chirino Alvarez, at a Wal-mart parking lot to pay $10,000 for the release of his Cuban cousin.

On June 17, 2008, Chirino and Lazaro Martinez Padron arrived at the Wal-mart location. A third man, Lazaro Martinez Munoz, drove some of the Cuban nationals, including Lopez's cousin, in a separate vehicle. The three conspirators were arrested after Chirino took money from an undercover ICE agent.

The four defendants — Almeida, Mojena, Duartes and Velazquez — charged in this case were arrested later.[1] Munoz cooperated with investigators and testified against the defendants at trial by describing in detail how the smuggling scheme was carried out. According to Munoz, Defendant Almeida planned the smuggling operation with Martinez Padron and drove the first boat to Cuba. Defendant Mojena drove the second boat with Munoz. Defendant Duartes, who is Mojena's wife, cooked meals for the Cuban nationals while they were held at the Fort Myers beach house and helped call relatives to demand money for their release. Mojena and Duartes also rented the Fort Myers beach house. Defendant Velasquez patrolled the waters near the Fort Myers beach house on a jet ski and watched for the U.S. Coast Guard. At trial, over the defendants' objections, the

_____

[1]Chirino and Martinez Padron were charged and tried separate from the other conspirators.

3

government submitted redacted versions of I-213 immigration forms, which contain basic biographical information collected by immigration officials, for each of the eight smuggled Cuban nationals to show their alien status.

Each of the four defendants Almeida, Mojena, Duartes and Velazquez were charged with 25 criminal offenses: one count of conspiracy to induce aliens to enter the United States illegally, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(A)(v)(I); eight counts of inducing an alien to enter the United States illegally, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and 18 U.S.C. § 2; eight counts of knowingly bringing an alien to the United States for the purpose of commercial advantage and private financial gain, with the knowledge that said alien had not received prior authorization to enter the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and 18 U.S.C. § 2; and eight counts of knowingly bringing an alien to the United States without immediately presenting such alien to an immigration officer at a designated port of entry, with the knowledge that said alien had not received prior authorization to enter the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii), and 18 U.S.C. § 2. Each series of substantive counts involved, in turn, the same eight alien entrants.

After a trial, the jury found defendants Almeida, Mojena and Duartes guilty on all 25 counts. Defendant Velazquez was found guilty on the conspiracy count,

4

but acquitted on the 24 substantive counts. Almeida, Mojena and Duartes were all sentenced to concurrent 60-month prison terms on each count. Velazquez received a 34-month sentence. The defendants filed this appeal.

## II. DISCUSSION

The defendants raise several arguments that are clearly without merit, and we address them only briefly. First, the district court did not abuse its discretion in admitting the redacted I-213 immigration forms. See United States v. Caraballo, 595 F.3d 1214, 1227-29 (11th Cir. 2010) (concluding that I-213 forms are admissible as public records and reports under Federal Rule of Evidence 803(8)(B) and their admission does not violate the Confrontation Clause). Contrary to defendants' claims, the forms were not prepared in furtherance of a criminal investigation. Although the information on the I-213 forms was gathered after related arrests were made, ICE Special Agent Thomas Roberts testified that the I-213 forms were generated thereafter through the standard administrative processing at a local immigration office.

Second, the district court did not abuse its discretion in refusing the defendants' request for an official transcript of jury selection. Preparation of a trial transcript may be provided to appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, if it is determined to be necessary for the adequate representation

5

of an indigent defendant. See 18 U.S.C. § 3006A(e); see also United States v. Rinchack, 820 F.2d 1557, 1563 (11th Cir. 1987) (explaining that the district court has discretion in deciding whether to furnish services under the CJA). The defendants have not pointed to any objections to or possible irregularities with the jury selection process. Indeed, appellate counsel concede that they have not consulted with appointed trial counsel to discern whether there is any possible basis for raising a jury selection issue on appeal. The defendants cite no authority to support their claim that the district court automatically must provide a transcript of jury selection at public cost so that appellate counsel may discern whether any reversible error occurred at that stage of the proceedings. Given that the defendants have not shown the jury selection transcript was needed to adequately represent them, we cannot say the district court's refusal to provide it was an abuse of discretion.

Third, the district court did not err in admitting co-conspirator Munoz's testimony about an earlier alien smuggling operation that occurred only months prior to the charged alien smuggling operation. The earlier smuggling trip was similar in all material respects given that it: (1) involved the same conspirators, including these four defendants, performing the same roles in the operation; (2) used the same Fort Myers beach house; (3) involved two boats, with one making

the trip to Cuba and the other meeting up with it in open water for refueling and to transfer some aliens; (4) involved patrols of the waters outside the Fort Myers beach house on jet ski; and (5) was done for financial gain. Thus, Munoz's testimony was extrinsic evidence "inextricably intertwined" with the evidence of the charged offense that provided context, motive and setup of the charged offense. See United States v. US Infrastructure, Inc., 576 F.3d 1195, 1210 (11th Cir. 2009), cert. denied, ___ S. Ct. ___, 78 U.S.L.W. 3540, 78 U.S.L.W. 3546 (U.S. Mar. 22, 2010). Alternatively, the testimony was properly admitted under Federal Rule of Evidence 404(b) to show motive, preparation and knowledge, as well as an ongoing alien smuggling scheme. See United States v. Perez, 443 F.3d 772, 779 (11th Cir. 2006).

Fourth, there was sufficient evidence from which a reasonable jury could conclude that Defendant Duartes was guilty of all counts. The government presented evidence that: (1) Duartes was one of the conspirators to lease the Fort Myers house used as the U.S. destination point for the smuggled aliens in both the charged alien smuggling operation and the nearly identical earlier alien smuggling operation, and the rents were paid from the profits of the smuggling operations; (2) Duartes contacted some of the smuggled aliens' relatives and demanded the $10,000 fee; and (3) for her part in the smuggling operation, Defendant Duartes

7

was to be paid from her husband Mojena's share of the profits.  Given these facts, the jury reasonably could find that Defendant Duartes was not "merely present" at the Fort Myers beach house, but instead was an active participant in the charged smuggling operation.

There was also sufficient evidence to support the jury's guilty verdicts as to Defendants Mojena and Velazquez.  As already discussed, the I-213 immigration forms were properly admitted and established the smuggled individuals' alien status.  However, even absent the I-213 immigration forms, there was sufficient evidence from which the jury could find that the smuggled individuals were not lawful aliens.  Several of the smuggled aliens testified that they were Cuban nationals who did not have prior authorization to enter the United States and further identified through pictures additional smuggled aliens who boarded the boat with them in Cuba.

The defendants' remaining argument is that the district court erred in giving the jury an instruction on Pinkerton liability.  Under the Pinkerton doctrine, a defendant can be held liable for all reasonably foreseeable offenses committed by co-conspirators during and in furtherance of the conspiracy.[2]  See Pinkerton v.

_____

[2]The defendants do not challenge the wording of the district court's Pinkerton instruction, but instead argue that the instruction should not have been given at all.  Our review of the propriety of a Pinkerton instruction is limited to "whether the evidence was sufficient for a reasonable jury to have concluded, beyond a reasonable doubt, that the [substantive offense] was

8

United States, 328 U.S. 640, 645-48, 66 S. Ct. 1180, 1183-84 (1946). The defendant need not have "actual knowledge of those acts, so long as [the defendant] played more than a minor role in the conspiracy or had actual knowledge of at least some of the circumstances and events culminating in the reasonably foreseeable event." United States v. Baker, 432 F.3d 1189, 1235 (11th Cir. 2005). Pinkerton liability will not lie, however, "if the substantive crime 'did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.'" United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (quoting Pinkerton, 328 U.S. at 647-48, 66 S. Ct. at 1184).

Here, the jury could conclude beyond a reasonable doubt that the charged substantive offenses were reasonably foreseeable to all the members of the conspiracy. The defendants were charged with conspiring to induce aliens to enter the United States knowing that such entry was illegal. The government presented evidence that the specific object of the conspiracy was to bring Cuban nationals into the United States by boat to the Fort Myers beach house for a "smuggling fee."

a reasonably foreseeable consequence of the [charged conspiracy]." United States v. Alvarez, 755 F.2d 830, 848 (11th Cir. 1985). "In making this assessment, we must view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility choices made by the jury." Id. (citations omitted).

It was not only reasonably foreseeable, but an integral part of this smuggling scheme, that members of the conspiracy would actually bring the Cuban nationals into the United States and that those conspirators: (1) were doing so for financial gain; (2) knew that the aliens had not received prior authorization to enter; and (3) would not immediately be bringing the aliens to an immigration official at a designated port of entry. In other words, the government's evidence showed that the substantive alien smuggling offenses fell within the scope of the unlawful project. Thus, the district court properly instructed the jury on Pinkerton liability.

The defendants' argument that the Pinkerton instruction relieved the government of having to prove the requisite intent for the substantive offenses is without merit. In the context of Pinkerton liability, "[c]riminal intent to commit the substantive offenses may be established by the formation of the conspiracy." United States v. Woodward, 459 F.3d 1078, 1085 (11th Cir. 2006); see also United States v. Silvestri, 409 F.3d 1311, 1335-36 (11th Cir. 2005) ("[T]he court need not assess the individual culpability of a particular conspirator provided that the substantive crime was a reasonably foreseeable consequence of the conspiracy." (quotation marks omitted)).

**AFFIRMED.**