NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4116

_____

UNITED STATES OF AMERICA

v.

SHARPE JAMES,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cr-00578)
District Judge:  Honorable William J. Martini

_____

Submitted Under Third Circuit LAR 34.1(a)
February 11, 2013

Before:  HARDIMAN, ALDISERT, *Circuit Judges*.
and STARK[*], *District Judge*

(Filed:  February 12, 2013)

_____

OPINION OF THE COURT

_____

---

[*]  The Honorable Leonard P. Stark, District Judge for the District of Delaware sitting
by designation.

HARDIMAN, *Circuit Judge*.

Sharpe James appeals the District Court's order denying his motion for a new trial. We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the facts and procedural history essential to its disposition.

Sharpe James is the former mayor of Newark, New Jersey. In 2008, a jury convicted him of mail fraud in violation of 18 U.S.C. § 1341 and fraud involving local government receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A).[1] These convictions stemmed from transactions in which James steered sales of real property owned by the City of Newark to his paramour, Tamika Riley.

Before trial, the District Court sent prospective jurors a voir dire questionnaire. Question 11(a) asked: "Do you personally know, or do you have any immediate family members or close friends who know, either of the defendants or any members of their families?" (Supp. App. 3.) Question 16 asked: "Have you or any member of your immediate family ever had any business or other dealings with the City of Newark?"

---

[1] James was also convicted of conspiracy to defraud the public of honest services in violation of 18 U.S.C. § 371. We vacated this conviction in light of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), which limited the scope of the honest services fraud statute, 18 U.S.C. § 1346. *See United States v. Riley*, 621 F.3d 312, 339 (3d Cir. 2010).

(Supp. App. 6.) Question 19 asked: "Have you or any member of your immediate family lived in Newark in the past 25 years?" Question 22 asked: "Have you, any member of your immediate family, or any close friend ever been involved with a political campaign in opposition to or in support of Sharpe James?" Finally, Question 33 asked: "Have you or any member of your immediate family ever been an officer or employee of the federal government or of any state, county, or municipal government?"

Juror 188 answered "no" to questions 11(a), 16, and 22, while answering "yes" to questions 19 and 33. Sometime after trial, James discovered that Juror 188's mother and stepfather were employed by the City of Newark. Additional investigation revealed that Juror 188's stepfather had also contributed to James's political campaigns and attended fundraisers for James.

In 2011, James moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, averring that he had hired Juror 188's parents and would have moved to challenge Juror 188 for cause had he known of Juror 188's parents' employment status. The District Court denied James's motion without holding an evidentiary hearing. James timely appealed.

3

II[2]

We review both the District Court's refusal to grant a new trial and its refusal to hold an evidentiary hearing for abuse of discretion. *See United States v. Gilsenan*, 949 F.2d 90, 95, 97 (3d Cir. 1991).

To obtain a new trial for false juror testimony, a defendant must show: (1) that the "juror failed to answer honestly a material question on *voir dire*"; and (2) "that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). Entitlement to an evidentiary hearing requires a defendant to present "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial." *United States v. Stewart*, 433 F.3d 273, 302–03 (2d Cir. 2006) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). Because James does not possess "clear, strong, substantial and incontrovertible evidence" that either of the *McDonough* prongs are satisfied, the District Court did not abuse its discretion by refusing to grant a new trial without an evidentiary hearing.[3]

---

[2] The District Court exercised jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction over James's appeal under 28 U.S.C. § 1291.

[3] The Government also argues that James does not satisfy Rule 33's procedural requirements because he failed to exercise reasonable diligence in discovering Juror 188's parents' employment status. Because we find that James is not entitled to relief, we do not reach the question of whether he satisfied Rule 33's procedural requirements. *See*

4

A

To satisfy the first prong of *McDonough*, a defendant must show that the juror's answer was dishonest, as opposed to merely "mistaken, though honest." *McDonough*, 464 U.S. at 555; *see also United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) ("Generally, we will not invalidate a jury verdict because of a juror's mistaken, though honest response at *voir dire*." (citation and internal quotation marks omitted)). James argues that Juror 188's answers to Questions 11(a), 16, and 22 were dishonest.

In response to Question 11(a), Juror 188 answered that neither he nor any members of his immediate family personally knew James. This answer was not dishonest. The only evidence that James presented to the contrary was that Juror 188's stepfather donated to James's political campaigns and attended his fundraisers. These activities do not prove that James's stepfather personally knew James. *See Hodge*, 321 F.3d at 441 (juror who stated that she did not know the defendant was "mistaken, though honest" when the juror took a class with the defendant, but did not believe that she knew the defendant personally).

In response to Question 16, Juror 188 answered that no members of his immediate family had "business or other dealings" with the City of Newark even though his mother and stepfather were employed by the City. This answer was not dishonest because the

*Eberhart v. United States*, 546 U.S. 12, 16, 19 (2005) (Rule 33's timeliness requirements are nonjurisdictional).

phrase "business or other dealings" does not necessarily include employment. *See, e.g.*, *United States v. Woodard*, 459 F.3d 1078, 1086 n.8 (11th Cir. 2006) (discussing an Atlanta Police Department regulation prohibiting employees from becoming interested "in any business dealing with the City" (internal quotation marks omitted)); *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 103 (3d Cir. 1996) ("The amendments made it illegal to discriminate on the basis of sexual orientation in the employment relationship, in public accommodations, and in business dealings."). In this case, interpreting the phrase "business or other dealings" to exclude employment is especially reasonable because Question 33 specifically asked whether the juror or any family member had "ever been an officer or employee" of a government unit. Given that Juror 188 answered "yes" to Question 33, it is unlikely that he was trying to conceal his parents' employment status when he answered "no" to Question 16.

In response to Question 22, Juror 188 answered that no member of his immediate family had "ever been involved with a political campaign in opposition to or in support of Sharpe James," even though his stepfather had donated to James's campaign and attended fundraisers for James. Once again, this answer was not dishonest. The only evidence James presents to suggest that Juror 188 knew of his stepfather's political activities was that he lived together with his stepfather. The stepfather's political activities consisted only of donating money and attending fundraisers. These activities could have been conducted away from home, without Juror 188's knowledge. Furthermore, even if Juror

6

188 knew of his stepfather's activities, he could have reasonably interpreted the phrase "involved with a political campaign" in Question 22 not to include merely donating money to that campaign and attending its fundraisers.

The honesty of Juror 188's answers is further evidenced by his candid responses to other voir dire questions. Other courts have recognized that a juror's candor or lack thereof during voir dire sheds light on whether individual misstatements were dishonest. *See, e.g.*, *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (noting that the district court engaged in "careful consideration of the entire record" to determine whether a juror's response was dishonest); *Conner v. Polk*, 407 F.3d 198, 205–06 (4th Cir. 2005); *Green v. White*, 232 F.3d 671, 677–78 (9th Cir. 2000); *United States v. Perkins*, 748 F.2d 1519, 1531–32 (11th Cir. 1984). Here, the District Court found that Juror 188's conduct during voir dire was forthright. He gave honest responses to Questions 19 and 33, in which he disclosed the names of his family members who resided in Newark and the fact that at least some were government employees. He also acknowledged that he had read about the case in the newspaper and responded frankly to the District Court's questions about what he had read. When asked by the District Court whether he had ever met James, Juror 188 disclosed that he had interviewed James in high school, and gave additional details about that meeting at the lawyers' request. This pattern of conduct further illustrates that the evidence that Juror 188 was dishonest was not "clear, strong, substantial and incontrovertible." *See Stewart*, 433 F.3d at 302–03.

7

B

Even if Juror 188's answers were dishonest, they would not have provided a valid basis for a challenge for cause, as required by the second prong of *McDonough*. "In determining whether a particular juror should be excused for cause, our main concern is whether the juror holds a particular belief or opinion that will prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *United States v. Murray*, 103 F.3d 310, 323 (3d Cir. 1997) (quoting *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 153 (3d Cir. 1995)). "Determining whether a prospective juror can render a fair verdict lies peculiarly within a trial judge's province," and "the trial court's resolution of such questions is entitled . . . to special deference." *Id.* (quoting *United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992), and *United States v. Ferri*, 778 F.2d 985, 994 (3d Cir. 1985)).

In this case, James claims that Juror 188 might have been inclined to convict him to avoid reprisals against his parents and enhance their job security. This claim is supported only by speculation rather than the "clear, strong, substantial and incontrovertible evidence" required for James to receive an evidentiary hearing. As the District Court found, Juror 188's parents were two employees in a municipal workforce of over 4,000 persons and thus had only an attenuated connection to James. Juror 188 testified that he could disregard outside influences and be a fair and impartial juror, and the District Court was satisfied with Juror 188's impartiality. Therefore, the District

8

Court did not abuse its discretion by finding that Juror 188's parents' employment status would not have supported a challenge for cause.

Nor do Juror 188's stepfather's donations to James's campaign indicate a bias against James. If anything, the fact that Juror 188's stepfather had supported James's campaign would tend to support a bias *in favor of* James. In fact, when Juror 213 disclosed that she worked on James's 2002 mayoral campaign before switching allegiance to James's opponent in 2006, the Government challenged Juror 213 for cause over James's opposition. Thus, James is not entitled to a new trial on the grounds that Juror 188 failed to disclose his stepfather's support for James's political campaigns. *See Gilsenan*, 949 F.2d at 91–93, 95 (jurors' failure to disclose during voir dire that they had read "newspaper accounts [that] made it appear that the government's case was extremely weak" was not grounds for new trial because that failure to disclose was favorable to defendants).

*       *       *

Because James is not entitled to an evidentiary hearing and cannot satisfy either of the *McDonough* prongs, he is not entitled to a new trial. *See McDonough*, 464 U.S. at 556. Accordingly, we will affirm the judgment of the District Court.