[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15266
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20062-MGC-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE ROJO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 8, 2015)

Before JORDAN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Rojo, a former therapist at Biscayne Milieu Health Center ("BMHC"), appeals his conviction and sentence for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  On appeal, Rojo argues that that there was insufficient evidence that he knew of the conspiracy and intentionally and willfully agreed to join it.  He also contends that the district court improperly determined his loss amount under the Sentencing Guidelines and failed to consider the loss amounts attributed to other individuals involved in the conspiracy.

## I.  Sufficiency of the Evidence

We review *de novo* the denial of a motion for judgment of acquittal on sufficiency of evidence grounds.  *United States v. Friske*, 640 F.3d 1288, 1290 (11th Cir. 2011).  We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, "with all reasonable inferences and credibility choices made in the government's favor."  *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotations omitted).  A defendant who testifies in his own defense risks bolstering the government's case with his own testimony.  *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).  His testimony, if disbelieved by the jury, may be considered, along with other evidence, as substantive evidence of guilt.  *Id.*

The health care fraud statute provides that:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

2

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347. Any person who "conspires to commit [health care fraud] shall be subject to the same penalties as those prescribed for [health care fraud]." 18 U.S.C. § 1349. For a defendant to be found guilty of conspiracy, the government must prove beyond a reasonable doubt "(1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (quotations omitted). Circumstantial evidence can be used to establish the elements of a conspiracy. *Id.* A defendant may be convicted of conspiracy if the evidence demonstrates that he knew the essential objective of the conspiracy, even if he did not know all of its details or played only a minor role in the overall scheme. *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002). We will affirm a conspiracy conviction if "the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." *Vernon*, 723 F.3d at 1273-74 (quotations

3

omitted).  The government can establish that the defendant voluntarily joined the conspiracy "through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *Id.* at 1274 (quotations omitted).

There was sufficient evidence presented at trial that Rojo knew about, and voluntarily joined, a conspiracy to defraud Medicare. *Vernon*, 723 F.3d at 1273. John Jackson, former clinical director at BMHC, testified that Rojo knew many patients were recruited and paid to become patients and did not qualify for partial hospitalization program ("PHP") group therapy treatment.  BMHC therapists filed false therapy notes for group therapy sessions that never occurred.  BMHC administrators and clinical directors told therapists, including Rojo, to omit from their therapy notes that patients suffered from dementia or substance abuse because Medicare would not cover PHP treatment for those patients.  Medicare was billed for group therapy sessions in which Rojo showed movies, worked on his private mental health therapy practice on his computer instead of conducting the session, or allowed patients to conduct the session while he left the room.  Many of Rojo's treatment plans and therapy notes, despite being for different patients, were identical.  The government established that Rojo voluntarily joined the conspiracy through proof of Rojo's acts that furthered the purpose of the conspiracy, from writing, or having his non-therapist brother write, false treatment plans and therapy

4

notes, to referring other BMHC therapists to his brother, who wrote their false therapy notes as well. *Vernon*, 723 F.3d at at 1274. The evidence demonstrated that Rojo knew the essential objective of the conspiracy, even if he did not know all of its details, which is sufficient for a conspiracy conviction. *Guerra*, 293 F.3d at 1285. The testimony of three co-conspirators -- Jackson, BMHC therapist Lucia Ochoa, and BMHC receptionist and translator Roselyn Charles -- along with Rojo's testimony, which the jury apparently did not believe, showed that the circumstances surrounding Rojo's involvement with BMHC were "so obvious that knowledge of [the conspiracy's] character c[ould] be fairly attributed to [Rojo]." *Vernon*, 723 F.3d at 1273-74.

## II.  The Loss Amount Attributed to Rojo

We review the district court's determination regarding the amount of loss under the Sentencing Guidelines for clear error. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009). The loss amount is the greater of the actual or intended loss. U.S.S.G. § 2B1.1, comment. n.3(A). Actual loss is the monetary harm that resulted from the offense and that was reasonably foreseeable, whereas intended loss is the monetary harm that was intended to result from the offense. *Id.* § 2B1.1, comment. n.3(A)(i)-(ii). Intended loss includes pecuniary harm that would have been impossible or unlikely to occur. *Id.* § 2B1.1, comment. n.3(A)(ii)(II). A loss amount need only be a reasonable estimate based on the

available information and not a precise calculation.  *See United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006).

The district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy.  *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003); U.S.S.G. § 1B1.3(a)(1)(B).  However, because "the limits of sentencing accountability are not coextensive with the scope of criminal liability," the district court should take a two-pronged approach to determining loss liability for the acts of co-conspirators.  *Hunter*, 323 F.3d at 1319.  The court must "first determine the scope of criminal activity the defendant agreed to jointly undertake, and then consider all reasonably foreseeable acts and omissions of others in the jointly undertaken criminal activity."  *United States v. McCrimmon*, 362 F.3d 725, 731 (11th Cir. 2004) (quotation omitted).  The 18 U.S.C. § 3553(a) factors apply only to assess the reasonableness of a final sentence.  *See United States v. Dorman*, 488 F.3d 936, 938 (11th Cir. 2007) (explaining that reasonableness standard is not applied to each individual decision made during the sentencing process, only to the final sentence).

The district court did not clearly err when it found $49,366,900, the amount BMHC billed Medicare from January 2007 through when the conspiracy ended in September 2011, to be the appropriate loss amount.  This was a reasonable

6

estimate of the intended loss based on the available information.  *See Woodard*, 459 F.3d at 1087.  Though the court acknowledged that there may have been "some beneficial therapy going on" at BMHC, it also correctly noted that it would be "very difficult for [the] court to look at the minute number of beneficial and accurate patients in order to make a determination as to who they were."  Further, Rojo presented no specific evidence to show which claims were legitimate and which were fraudulent, instead asserting generally that all the claims based on his notes were legitimate.  Based on the evidence presented during Rojo's trial and the evidence presented during the other sentencings in the case, the court concluded that, "for the most part, [BMHC] was a fraud, and the relevant amount is the entire scheme."  The court was not required to do a more precise calculation of the loss amount.  *Woodard*, 459 F.3d at 1087.

Rojo's reliance on 18 U.S.C. § 3553(a)(6) is misplaced, because the  § 3553(a) factors apply only to assess the reasonableness of a final sentence, not to each individual decision made during the sentencing process.  *See Dorman*, 488 F.3d at 938.  Finally, as to Rojo's argument that the loss amount included periods before he was employed at BMHC, Rojo testified at trial that he began working at BMHC in September 2006, and he did not object to the PSI's finding that he worked there beginning on January 1, 2007.  As to his argument that the loss amount included periods after he was employed at BMHC, it was reasonably

foreseeable that his co-conspirators at BMHC would continue to fraudulently bill Medicare, sometimes using his patient files, so the district court did not err in finding him responsible for the losses resulting from both his own acts and the acts of his co-conspirators.  *Hunter*, 323 F.3d at 1319; U.S.S.G. § 1B1.3(a)(1)(B). Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**