NOT FOR FULL-TEXT PUBLICATION
File Name:  12a0057n.06

No. 11-1190

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 13, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

        **Plaintiff-Appellee,**

v.

OMAR ABUKAR SUFI,

        **Defendant-Appellant.**

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, SUTTON, and COOK; Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.**  Defendant Omar Sufi (Omar) pled guilty to conspiracy to commit food stamp fraud, operate an unlicensed money transfer business, and structure currency transactions to evade reporting requirements; and to substantive counts of the underlying crimes. He raises several issues pertaining to his sentence on appeal.  We affirm.

## I.  Background

      In September 2005, Omar and his brother and coconspirator Mohamed Sufi opened the Halal Depot, a small grocery store in Wyoming, Michigan.  The Halal Depot applied to and became an authorized redeemer of both United States Department of Agriculture (USDA) food stamps and Women and Infant Children (WIC) program benefits.  The brothers unlawfully converted food stamp and WIC benefits into cash for a commission, operated an unlicensed money transfer business, and

*No. 11-1190*
*United States v. Sufi*

structured currency transactions to evade reporting requirements. The United States Department of Agriculture (USDA) began a criminal investigation of the store after receiving a letter in November 2007 that the Sufis were exploiting the local Somali community by trafficking in food stamps, selling drugs, and wiring food stamp money overseas.

The Sufis were charged with conspiracy, in violation of 18 U.S.C. § 371(Count 1); food stamp fraud, in violation of 7 U.S.C. § 2024 (Count 2); operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a) (Count 3); and four counts of structuring financial transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(1), (d) (Counts 4-7), three of which applied to Omar. Omar pled guilty to all six counts that applied to him, without a plea agreement.

Omar was twenty-nine years old at sentencing. A Somali native, he came to the United States as a refugee in 1996. He became a naturalized citizen and obtained some college education. He had no prior criminal history.

Based on a total offense level of 18 and a criminal history category of I, the presentence report calculated the Guidelines range at 27-33 months. The presentence report set the loss at $401,670.24 for the food stamp and WIC programs, and $254,235 for the unlicensed money transfer business.[1] The brothers also structured at least $42,290. Omar objected to the loss calculation and sought a downward variance.

---

[1]The brothers filed a joint motion for purposes of determining the loss amount. The district court denied it.

*No. 11-1190*
*United States v. Sufi*

The district court felt that the advisory guidelines were too low for a theft of this scale that involved an abuse of trust, and sentenced Omar to sixty months imprisonment on each count, to be served concurrently, three years supervised release, and $401,670.24 in restitution (joint and several with codefendant Mohammed).[2]  The court also charged Omar $22,000 under the Criminal Justice Act to pay for his appointed attorney.

Omar appeals.

## II.  Analysis

On appeal, Omar argues that the district court erred when it sentenced him to a sixty-month sentence, far above the 27-33 month guidelines range, because it (1) relied on an incorrect estimation of the amount of loss; (2) erred in finding that the amount, complexity, and multiplicity of the fraud suggested a higher sentence; (3) gave improper weight to certain factors under 18 U.S.C. § 3553(a); and (4) improperly focused on Omar's status as a naturalized citizen.  Omar also objects to the order of restitution, because it was based on the court's allegedly flawed estimation of the amount of loss.  Omar further complains that the court erred in requiring him to reimburse the government under the Criminal Justice Act for his court-appointed attorney fees.  Finally, Omar asks that a different district judge be assigned if the case is remanded.

### A.  Sentencing Guidelines Issues

This court reviews a district court's sentencing decision for reasonableness, under a deferential, abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 40 (2007); *Rita v.*

---

[2]Mohamed also received a sixty-month sentence.

*No. 11-1190*
*United States v. Sufi*

*United States*, 551 U.S. 338, 364 (2007).  Reasonableness has both a substantive and a procedural

component.  *See Gall,* 552 U.S. at 51; *United States v. Madden*, 515 F.3d 601, 609 (6th Cir. 2008).

A sentence is procedurally unreasonable if the court improperly calculated the guidelines range,

treats the guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based

on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51.

To be substantively reasonable, the sentencing court is required to impose a sentence that is

"sufficient, but not greater than necessary, to comply with the purposes" or need for the sentence.

18 U.S.C. § 3553(a). A sentence may be substantively unreasonable if the court fails to consider

relevant sentencing factors or gives an unreasonable amount of weight to any pertinent factor. *United*

*States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007). "The essence of a substantive-reasonableness

claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals

set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir.

2010).

### 1. Loss Calculation

Omar argues that the court clearly erred in its estimation of the amount of loss, which

affected the calculation of the guidelines range, rendering his sentence procedurally unreasonable.[3]

We review a district court's fact findings at sentencing as to loss and restitution for clear error, and

---

[3]U.S.S.G. § 2B1.1(b)(1) states that if the loss exceeds $400,000, add 14 levels.  A loss of $200,000 to $400,000 adds 12 to the offense level.  The loss calculation here was $401,670.24. If Omar had received the 12-level enhancement rather than the 14-level enhancement, his Guidelines range would have been 21-27 months, rather than 27-33 months.

No. 11-1190
United States v. Sufi

its methodology for calculating loss de novo. *United States v. McCarty*, 628 F.3d 284, 290 (6th Cir. 2010). A fact finding is clearly erroneous if, despite evidence to support that finding, the reviewing court has a firm conviction that a mistake has been committed. *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002) (citations omitted). The Sentencing Guidelines require the district court to determine the amount of loss by a preponderance of the evidence. *McCarty*, 628 F.3d at 290.

The Sentencing Guidelines also require that the district court make only a reasonable estimate of the loss. U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n.3(C) (2010); *United States v. Triana*, 468 F.3d 308, 320 (6th Cir. 2006) (stating that "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information"). This is because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1, cmt. n.3(C). Precision is not required. *Triana*, 468 F.3d at 320 (citation omitted).

The district court was presented with two competing methodologies for calculating loss. At the sentencing hearing, government witness Jennifer Renegar, a management analyst with the USDA Food and Nutrition Service (FNS), testified that she relied on the comparison average method, which uses empirical data from a national data base, and that she had twelve years' experience using this methodology. Renegar chose four comparable stores of similar size, inventory, and customer base within five miles of the Halal Depot. Government witness Travis Deters, an investigator for the USDA Office of Inspector General, stated that he averaged the monthly redemptions for the four comparison stores selected by Renegar and subtracted that amount from the Halal Depot's

-5-

*No. 11-1190*
*United States v. Sufi*

redemptions to arrive at an estimate of loss. Deters estimated that $397,140.24 of food stamp redemptions at the Halal Depot were fraudulent and $4,000 of the WIC redemptions were fraudulent between 2005 and 2009.

Omar's expert, Robert Walker, a former IRS investigator, estimated $201,124 in legitimate food sales from 2006 through 2009, based on the Halal Depot's tax returns and invoices. Walker criticized the government's methodology because it was merely an estimate, not based on documents or testimony, and it assumed that all redemptions were fraudulent. Further, the government did not explain how the other stores compared and did not show that their self-reported figures were accurate.

On cross-examination, Omar's expert admitted that he had no expertise in the food business, had not reviewed FNS food stamp redemption data, had not established objective criteria for comparing stores, did not know what the comparison stores stocked during the relevant time frames, and relied only on his visual observations in deciding the stores were not comparable. On this latter point, he conceded he was "not an expert at all, just a fact witness." Walker further admitted that he never saw the invoices, and simply relied on the tax preparer's word that the returns were based on valid information. He conceded that if the tax returns were based in part on fraudulent invoices, his estimates would be inaccurate. Most importantly, Walker conceded that he could not provide to the court a figure of the estimated food stamp fraud using his methodology.

The district court accepted the government's methodology.

The court's loss calculation was not clearly erroneous. The loss occasioned by financial fraud in this case was not easy to quantify, especially since, as the district court pointed out, "the

*No. 11-1190*
*United States v. Sufi*

defendant kept lousy records, to the extent he kept records at all." The court felt that Omar should

not derive a benefit from this failing, and chose a methodology that was "carefully constructed" as

well as "objective and straightforward." The district court reasonably relied on the government's

experts' methodology, *see United States v. Lutz*, 154 F.3d 581, 590 (6th Cir. 1998) (relying on

agency employee's testimony regarding loss to the government agency), especially since it

determined that "Mr. Walker's expertise, such as it is, does not translate into this particular

circumstance." The court made a reasonable estimate of loss given the available information, which

is entitled to deference by this court. *Cf. United States v. Uddin*, 551 F.3d 176, 180-81 (2d Cir.

2009) (affirming district court's estimate of loss from food stamp fraud using an average food stamp

transaction of $12, and assuming 60% of transactions over $50 were fraudulent; "even if not based

on precise data," was reasonably based on average dollar amount of food stamp redemptions at

smaller, comparable grocery stores in New York City).[4] Omar has not carried his burden of showing

---

[4]This is why *United States v. Ali*, 619 F.3d 713 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 965 (2011), is inapplicable here. In *Ali*, the court accepted the government's loss calculation, which subtracted Star Foods's legitimate food stamp sales (approximately $2.7 million retail value), from its total food stamp redemptions (approximately $7 million). *Id.* at 720-21. "Relying exclusively on Ali's own business records," the government's expert witness was able to determine that Ali spent $1.8 million on food and non-liquor stock, by totaling the checks written. *Id.* at 717. The agent also "reviewed sixteen months of bank reconciliations that categorized purchases" made by check, with a reference number that corresponded to a check number. *Id.* This amount was adjusted to $2.7 million, or estimated retail value. *See also United States v. Hassan*, 211 F.3d 380, 384 (7th Cir. 2000) (deriving loss figure by subtracting actual total sales from actual food stamp redemptions; quality of the store's records not at issue); *United States v. Bahhur*, 200 F.3d 917, 924 (6th Cir. 2000) (affirming district court's loss calculation which compared food stamp deposits with checks to distributors).

In other words, the net loss approach recommended by U.S.S.G. § 2B1.1, cmt. n.3(E), was not workable in this case due to inadequate record keeping by the defendants.

*No. 11-1190*
*United States v. Sufi*

on appeal that the loss determination "'was not only inaccurate but outside the realm of permissible computations.'" *United States v. Hassan*, 211 F.3d 380, 383 (7th Cir. 2000) (quoting *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994)).

## 2.  Upward Variance

Next, Omar contends that the court erred in holding that the economic offense guideline, United Sentencing Guidelines Manual § 2B1.1, did not adequately account for his crime.  With the Guidelines, the recommended range was 27-33 months.  Omar contends the sixty-month sentence is unfair because it is the same as placing him in the Guidelines range for offense level 24 and CHC of I (51-63) months, which corresponds to a $7 million dollar loss, *see* U.S.S.G. § 2B1.1(b)(1)(K), or offense level 25, CHC I (57-71 months), which corresponds to a $20 million dollar loss, *see id.* §2B1.1(b)(1)(L).  He claims that U.S.S.G. § 2B1.1(b)(1) considers the amount of loss, and accounts for complexity and multiplicity by building into the Guideline range an additional enhancement for more than minimal planning.   Finally, he argues that the district court's focus on his abuse of trust of the food stamp program was improper, because theft or misuse of public benefits has been taken into account.  *See* U.S.S.G. § 2B1.1 cmt. n.3(F)(ii) (stating that in a case involving government benefits, "loss shall be considered to be not less than the value of the benefits . . . diverted to unintended uses, as the case may be").

The Sentencing Guidelines allow a court to impose a sentence outside the applicable Guidelines range if it finds that an aggravating (or mitigating) circumstance exists to a degree not adequately taken into consideration by the Guidelines. 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0. *See Koon v. United States*, 518 U.S. 81, 95 (1996).  We review a district court's decision to depart

*No. 11-1190*
*United States v. Sufi*

from the Guideline sentencing range for abuse of discretion. *United States v. Chance*, 306 F.3d 356, 393 (6th Cir. 2002). *See also United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir.) (stating that although the standard of review does not change based on whether a sentence is inside or outside of the Guidelines range, the greater the variance, the more compelling the evidence must be), *cert. denied*, 131 S.Ct. 488 (2010).

The court explained that several of the § 3553(a) factors led it to impose the above-guidelines sentence, including the loss amount; the multi-faceted nature of the scheme, which included food stamps, WIC benefits, illegal money transfers, and avoidance of bank reporting laws; and that the scheme undermined the community's faith in public assistance programs. Although U.S.S.G. § 2B1.1 takes into account the amount of the loss, *see Triana*, 468 F.3d at 319-20 ("The Guideline enhances a defendant's sentence to correlate to the amount of loss caused [by] his fraud."), it does not take into account the several fraudulent schemes in this case or abuse of public trust. Section 2B1.1 cmt. n.3(F)(ii) merely addresses how to calculate the loss when government benefits are at issue. The district court did not abuse its discretion in deciding to depart upward to sixty months, based on the record.

### 3. Section 3553(a) Factors

Omar complains that the district court gave undue weight to the sentencing factors of punishment and promoting respect for the law, *see* 18 U.S.C. § 3553(a)(2)(A), making his sentence substantively unreasonable. Omar asserts that promoting respect for the law is part of the calculus for every sentence. Further, the need for punishment did not justify the sentence because he is a first-time offender with strong community support and family ties.

*No. 11-1190*
*United States v. Sufi*

The district court stated that "punishment and respect for the law" were "extremely important in this case," because Omar had breached the trust of the public as well as the people of his own community. And the court found that "deterrence and protection of the public" were factors because Omar had "preyed on the public"–both the public fisc and the individuals who came to his store. But the sentencing transcript also reflects that the district court noted its duty to impose a sentence sufficient but not greater than necessary to comply with the purposes of § 3553(a), and addressed the statutory sentencing factors, beginning with the nature and seriousness of the offense. The court noted the multi-faceted nature of the criminal scheme and the duration of the fraud. The court discussed the character of Omar, stating that "there is a lot to be said for Mr. Sufi." The court noted that he had overcome a difficult childhood, had some college credits, had a varied employment history, had no criminal history or history of substance abuse, was active in his immigrant community, and did not commit a crime of violence. In short, we find no abuse of discretion because the record reflects that the court gave appropriate weight to the relevant factors. *See Tristan-Madrigal*, 601 F.3d at 632.

### 4. Unwarranted Disparity

Omar alleges that the district court did not consider whether the sentence imposed created unwarranted disparity, *see* 18 U.S.C. § 3553(a)(6), and that this failure prevented meaningful review. Omar did not raise this issue below in either his sentencing memorandum or at the hearing, despite an explicit opportunity to do so at the conclusion of the proceedings. Under this court's precedent, the district court was not required to explicitly consider this factor unless it was raised by the defendant or was otherwise particularly relevant. *See United States v. Houston*, 529 F.3d 743, 751-

*No. 11-1190*
*United States v. Sufi*

52 (6th Cir. 2007) (district court did not err for failing to explicitly address disparity because defendant failed to raise it a sentencing); *United States v. Simmons*, 501 F.3d 620, 625-26 (6th Cir. 2007); *see also United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).  Moreover, § 3553(a)(6) is concerned with national disparities, which are generally taken into account by the Sentencing Guidelines.  *Houston*, 529 F.3d at 752.  By using the Guidelines as a starting point, the district court implicitly recognized the need to avoid unwarranted disparities.

Omar fails to explain how the cases he cites on appeal–where the defendants received shorter sentences despite larger loss amounts–are comparable to his own.  In short, there is no error plain or otherwise.

## 5.  Naturalized Citizen Status

Next, Omar claims the district court improperly focused on his naturalized citizen status and sentenced him more harshly as a result.  The district court found that Omar's difficult childhood as a refugee from the civil war in Somalia was "absolutely no excuse for what you did," finding it "perhaps more reprehensible," and stating that "for somebody who has had the wonderful opportunities that you have had to take those kind of shots I think is, well, it's reflected in my sentence."

Section 5H1.10 states that race, sex, national origin, creed, religion, and socio-economic status are not relevant factors in a sentencing determination.  U.S.S.G. § 5H1.10,  p.s..  *See also United States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir. 1991) ("[S]entencing an offender on the basis of factors such as race, national origin, or alienage violates the Constitution.").  Omar relies on *Onwuemene,* which held that the district court improperly considered the defendant's alien status

No. 11-1190
*United States v. Sufi*

at sentencing. There, the district court sua sponte stated that it was basing its sentencing at the high end of the Guidelines range because the defendant was "not a citizen of this country." *Id.* at 651. Here, however, in his sentencing memorandum Omar repeatedly referred to his national origin and naturalized status in support of his request for a downward variance. Thus, Omar cannot complain that the district court discussed his national origin and naturalized status at sentencing. *See Miller*, 48 F. App'x at 942-43 (finding no error where the district court's reference to race was "made in response to defense counsel's subtle plea for the court to go lightly"; distinguishing *Onwuemene*). *See also United States v. Dibbi*, 413 F. A'ppx 618, 620 (4th Cir. 2011) (per curiam) (holding that the court's comment on the defendant's immigrant background "and his seeming ingratitude in breaking the laws of a country that had 'treated [him] well'" while considering whether an above-Guidelines sentence was warranted, rather than as a reason for refusing to vary below the range, did not render the sentence unreasonable).

In any event, the record reflects that the sentence imposed was based on other factors, namely the complexity and multiplicity of the fraud scheme, and its effect on both the local community and food stamp program as a whole. In short, there is no error. *See Miller*, 48 F. App'x at 942 ("Although the district court's reference to race in this respect was ill-advised, we do not believe that the court sentenced Defendant on the basis of his race."); *see also id.* (citing cases from other circuits finding no error where the district court made a passing reference to race or national origin in response to remarks by defense counsel).

*No. 11-1190*
*United States v. Sufi*

## B. Attorney Fees

Originally, the magistrate judge appointed counsel for Omar after he completed a financial affidavit attesting to his inability to pay. At a detention hearing, the court set bond at $250,000, based on Omar's access to substantial unexplained funds and extensive overseas travel. Several weeks later Omar asked the court to reconsider bond, representing that he had access to $25,000, which was being held by his aunt. To show that the funds were from a legitimate source, Omar submitted three petition letters listing donors. The letters stated that the funds were given "to alleviate the hardship" of the Omars. One letter stated that the funds were "meant to cover the legal expenses" of the defendants. The court refused because Omar remained a flight risk.

The government filed a motion to compel Omar to reimburse the government for court-appointed counsel. Omar objected on the grounds that he was indigent and presently incarcerated, and that he had over $12,000 in credit card debt. After a hearing, the magistrate judge granted the government's motion, finding that $22,160 held by Omar's aunt was available to repay the government for the appointed counsel. The district court affirmed the magistrate's order.

Under the Criminal Justice Act, a district court is authorized to appoint counsel for criminal defendants if they are "financially unable" to hire counsel of their own. 18 U.S.C. § 3006A(b). The Act also allows a court to terminate the appointment and order repayment for the services provided, if "at any time after the appointment" the court learns that the defendant is "financially able" to obtain counsel or pay for the representation already provided. *Id*. § 3006A(c), (f). The Act gives a district court "considerable discretion in navigating these and other considerations." *United States v. Wilson*, 597 F.3d 353, 358 (6th Cir. 2010). Further, the foregoing provisions "suggest a pragmatic

*No. 11-1190*
*United States v. Sufi*

inquiry into whether a defendant could afford, or could have afforded, to pay for counsel at the outset, and whether it is fair to make the defendant pay for counsel after the fact." *Id.* at 359. At the same time, "a thorough inquiry into the defendant's finances, though not a full adversarial hearing, should precede any order." *Id.* at 358.

Omar claims the court erred because he represented, without contradiction by the government, that he had no income, and $12,605.16 in credit card debt. On appeal he claims the court erred in refusing to weigh his financial circumstances against the funds that were available, and therefore its order constitutes an abuse of discretion. Omar is in essence asking the taxpayers to pay the costs of his legal defense so his defense fund can be used for his credit card debt. We find no abuse of discretion here.

### C.  Remaining Claims

Having affirmed the district court's loss determination, we need not address his complaint regarding the restitution amount. *See* 18 U.S.C. § 3664(f)(1)(A) (stating that the court shall order restitution in the full amount of the victim's losses). Finally, having rejected his other contentions, we need not consider his request for a different judge on remand.

### III.  Conclusion

The judgment of the district court is AFFIRMED.