[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10960
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-00260-LMM-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TESSEMA LULSEGED,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 16, 2017)

Before JULIE CARNES,  JILL PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Tessema Lulseged appeals his 51-month sentence, restitution, and forfeiture following his guilty plea to one count of food-stamp trafficking.  We affirm.

## I. BACKGROUND

Lulseged, a naturalized United States citizen born in Ethiopia, owned and operated Tess Market, Inc., d/b/a Big T Supermarket ("Big T"), in Decatur, Georgia.  Lulseged was authorized to accept food stamps and knew it was illegal to exchange food stamps for cash at face value or at a discount.  From 2009 until 2014, Lulseged allowed customers to exchange their food-stamp benefits at the rate of $0.60 on the dollar.  As part of the deal, Lulseged required the customers to purchase eligible-food products from his store equal to ten percent of the value of the transaction.  Lulseged trafficked in food stamps of a value of $5,000 or more.[1] In 2014, Lulseged was charged with one count of trafficking in food stamps, in violation of 7 U.S.C. § 2024(b)(l) and 18 U.S.C. § 2.  The indictment included a forfeiture provision stating Lulseged would forfeit all property derived from proceeds traceable to the crime.

---

[1] The Supplemental Nutrition Assistance Program is administered by the United States Department of Agriculture ("USDA") to help eligible families in need of food assistance.  Food stamps are issued in Georgia through the use of the Electronic Benefit Transfer ("EBT") system. Each recipient is given an EBT card credited with a specific monetary amount per month; the account balance is electronically reduced when a food purchase is made at a participating store. Stores must apply for and receive authorization from the USDA before accepting food stamps. Food stamps are non-transferable, cannot be used to buy certain items such as alcohol or tobacco, and cannot be exchanged for cash.  Purchasing or selling food-stamp benefits in exchange for cash is referred to as "trafficking."

At his arraignment and detention hearing, a magistrate judge asked Lulseged if he needed an interpreter in order to understand the court proceedings. Lulseged replied he understood what was taking place without the use of an interpreter. The government then noted at an earlier meeting Lulseged had said he did not understand English, but his lawyer at the time confirmed she had had a number of conversations where she and Lulseged communicated clearly in English. The government had arranged for an interpreter at that time, who spoke Amharic, Lulseged's native language, but Lulseged stated he did not understand the interpreter. Lulseged's attorney at the arraignment hearing confirmed he had not had any problems communicating with Lulseged over the course of his representation. The magistrate judge then informed Lulseged the court would provide him with an interpreter to assist him, if needed. Lulseged replied his English was at a "twelfth grade" level, and while he may not understand "really difficult" words, he could communicate. Arraignment Hr'g Tr. at 6 (Apr. 28, 2015). The magistrate judge stressed Lulseged should ask if he did not understand something during the proceedings, and Lulseged replied, "[y]es, I will let you know, and I will let [my] attorney [know], too." *Id.* Lulseged entered a not-guilty plea to the charge in the indictment.

At a change-of-plea hearing in July 2015, Lulseged agreed to enter a non-negotiated-guilty plea. He stated he had signed the proffered plea-with-counsel

3

form.  On examination by the district judge, Lulseged stated he was 49-years old, had been born in Ethiopia, had a twelfth-grade education, and could read and write. Lulseged then answered questions about his health, and his attorney stated he had no doubt as to Lulseged's competency to enter a guilty plea.  The judge reviewed Lulseged's constitutional rights and confirmed Lulseged understood them. Lulseged did not state he had any difficulty understanding the judge's description of his rights or otherwise object to the absence of an interpreter.

The judge reviewed the elements of the crime.  The parties agreed the total-loss amount involved more than $5,000, but the exact amount was disputed.  The parties agreed to resolve the issue of the total-loss amount at sentencing.  Lulseged confirmed he understood his pleading guilty could subject him to forfeiture up to and including the amounts contained in the indictment.

After presenting a summary of what it would have proved beyond a reasonable doubt had the case gone to trial, the government had initiated civil-forfeiture proceedings against the illegally obtained money as well as against Lulseged's personal residence and his store property.  Lulseged's brothers had claimed an interest in funds seized from two bank accounts; the government had settled with them.  Lulseged did not file a claim regarding any of the property or money implicated in the civil-forfeiture action.  He stated he had no disagreement

4

with the facts of the crime and understood his pleading guilty could subject him to a sentence up to the maximum allowed, 20 years of imprisonment.

The judge questioned Lulseged about whether he understood how sentencing and the Sentencing Guidelines functioned; Lulseged stated he was fully aware of the process. Lulseged said he had discussed the government's offer of a plea agreement with his lawyer. Nonetheless, he did not want a plea agreement and wanted to proceed with entering a non-negotiated guilty plea. Lulseged asked the judge to repeat the question of whether "anyone made [him] any promises or representations to get [him] to plead guilty." Guilty Plea Proceedings Tr. at 27 (July 7, 2015). The judge repeated the question and did so a third time when Lulseged again asked for it; Lulseged confirmed "no, nobody" had made any promises or representations to induce him to plead guilty. *Id.* at 28. He also confirmed no one had made any promise concerning what his actual sentence would be. Lulseged pled guilty; the judge found he had done so freely and voluntarily.

The probation office prepared a Presentencing Investigation Report ("PSI"), assigning Lulseged a base-offense level of 7 under U.S.S.G. § 2B1.1(a)(1), based on his conviction for trafficking in food stamps. The PSI showed Big T redeemed a total of $8,085,926.29 in food-stamp benefits over the course of the crime. The PSI stated Big T purchased only $745,596.68 in food-stamp-eligible inventory

5

during that time. Assuming Lulseged marked-up his food-stamp-eligible inventory by 35% (industry standard is 26.71%), Big T could have received a maximum of $1,006,555.52 from the sale of food-stamp-eligible products during his crime. The PSI showed the loss to the government was $7,079,370.77, the difference between Big T's total food-stamp redemptions and the amount Big T could have received from food-stamp-eligible sales. The PSI showed an additional 20 levels under the 2014 version of U.S.S.G. § 2B1.1(b)(1)(K) for a loss of more than $7,000,000, but less than $20,000,000[2] and two additional levels under U.S.S.G. § 3B1.3 for abuse of trust. Pursuant to U.S.S.G. § 3El.l(a) and (b), the probation officer recommended Lulseged receive a three-level reduction for acceptance of responsibility. The PSI showed Lulseged had zero criminal-history points, which resulted in a criminal-history category of I, an offense level of 26, and a Guidelines imprisonment range of 63 to 78 months. Lulseged objected to the loss amounts and calculation processes in the PSI.

Following several continuances, sentencing began on December 18, 2015. United States Department of Agriculture Special Agent Robert Harper testified in support of the government's proposed total-loss amount. Lulseged called a

---

[2] The PSI was drafted in anticipation the sentencing hearing would take place on September 22, 2015. The sentencing hearing was postponed several times, however, and did not take place until after the 2015 version of the Sentencing Guidelines had gone into effect. Under the revised Guidelines, a loss of more than $3,500,000, but less than $9,500,000, results in an increase of only 18 levels, rather than 20. U.S.S.G. § 2B1.1(b)(1)(J). The district judge used the Sentencing Guidelines in effect on the date Lulseged was sentenced. U.S.S.G. § 1B1.11.

Certified Public Accountant, Michael W. Thompson, to testify in support of his proposed total-loss amount. The judge found the evidence presented supported the government's total-loss calculations, and Lulseged had failed to rebut that evidence. The judge noted it was the government, and not Lulseged, that bore the burden of establishing a reasonable estimate of the total-loss amount. The judge applied the same 35% mark-up the government had used in its calculations, and subtracted $694,278.72 from the government's proposed loss amount of $7,055,728.88, resulting in a final sum of $6,361,450.16. The judge overruled Lulseged's objection to an 18-level enhancement, based on a loss amount between $3,500,000 and $9,500,000. U.S.S.G. § 2B1.1(b)(1)(J) (2015). The government also agreed to concede restitution should be decreased by the amount Lulseged argued was barred by the statute of limitations, $431,000, if the judge wanted to make a restitution order final at the hearing.

Based on the government's concession, the judge determined the final restitution amount was $5,930,450.16. The judge found the offense level was 24, the criminal-history category was I, and the Guidelines imprisonment range was 51 to 63 months. The judge found the forfeiture amount was $5,930,450.16, minus whatever proceeds Lulseged already had forfeited as a result of the civil-forfeiture action. After hearing arguments from both parties, and considering the sentencing factors in 18 U.S.C. § 3553(a), the district judge imposed a sentence of 51 months

7

of imprisonment and restitution in the amount of $5,930,450.16.  The judge overruled Lulseged's objection to the restitution amount.  Following sentencing, the judge entered a final forfeiture order for $4,948,795.11, reflecting the amount announced at sentencing, $5,930,450.16, reduced by the amount Lulseged already had forfeited in the civil forfeiture proceedings.

On appeal, Lulseged argues the district judge had a duty at his guilty plea and sentencing hearings to inquire as to whether he required an interpreter in order to understand those proceedings; the judge's failure to do so invalidated his sentence, because he could not comprehend his own sentencing hearing.  He also contends the government failed sufficiently to meet its burden of proving a reasonable estimate of the total loss involved in the crime.  He further argued the judge had erred in enhancing his Guidelines imprisonment range, based on that total-loss amount and in basing the restitution and forfeiture orders on the government's inaccurate total-loss amount.

## II. DISCUSSION

### A. Interpreter

Objections or arguments not raised in the district court are reviewed for plain error.  *See United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007).  "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not

8

harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Horsfall*, 552 F.3d 1275, 1284 (11th Cir. 2008) (citation and internal quotation marks omitted). "An error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court." *United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009).

Both the Court Interpreters Act and the Constitution commit the appointment of an interpreter to the sound discretion of the trial judge. *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989). The basic inquiry is whether the failure to provide an interpreter made a proceeding fundamentally unfair. *United States v. Tapia*, 631 F.2d 1207, 1210 (5th Cir. 1980). The Court Interpreters Act provides a district judge shall utilize an interpreter if

> the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings-- (A) speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 U.S.C. § 1827(d)(1). "Any indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language should trigger the application of Sections (d) and (f)(1) [defendant's waiver of the right to an interpreter] of the Court Interpreters Act." *Tapia*, 631

9

F.2d at 1209.  We have held the Act places "on the trial court a mandatory duty to inquire as to the need for an interpreter when a defendant has difficulty with English." *Valladares*, 871 F.2d at 1565.  The defendant, however, usually bears the burden of establishing an error prejudiced him.  *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993).  As a constitutional matter, in determining whether an interpreter is needed, the district judge must balance the defendant's rights to due process, confrontation of witnesses, effective assistance of counsel, and to be present at his trial "against the public's interest in the economical administration of criminal law." *Valladares*, 871 F.2d at 1566.

In view of the record from the arraignment and change of plea hearing, it is clear this case is quite different from *Tapia*, on which Lulseged heavily relies.  In *Tapia*, the defendant was arraigned through an interpreter and the defendant testified on his own behalf using an interpreter. *See Tapia*, 631 F.2d at 1209.  We concluded the district judge should have inquired into whether an interpreter was necessary for him to understand the proceedings. *Id.*  The judge in this case had no such obligation, because there were not sufficient indications Lulseged did not have a sufficient grasp of English to require an interpreter.  Lulseged's arraignment was held entirely in English; at that time, the judge did inquire as to whether an interpreter might be necessary going forward.  Both Lulseged and his attorney stated an interpreter was not necessary, because he understood and could

10

communicate in English competently.  Lulseged addressed the judge, in English, at his change of plea and sentencing hearings.  Because the district judge was not on notice Lulseged could not understand or communicate effectively in English, the judge did not err by failing to conduct further inquiry into whether his comprehension of the proceedings or communication with his counsel would be inhibited by difficulty with the English language.  *Valladares*, 871 F.2d at 1565-66.

Even if it was error for the judge not to ask at the guilty plea and sentencing hearings if Lulseged needed an interpreter, such error was not plain.  *See Horsfall*, 552 F.3d at 1284.  An error cannot be plain unless it is contrary to on-point precedent from the Supreme Court or this court.  *See Schultz*, 565 F.3d at 1357. Because there is no on-point precedent, the judge properly determined no interpreter was required, based on the representations of  Lulseged and his attorney.

**B. Loss Amount**

We review a district judge's findings of fact concerning the loss amount for clear error and the methodology for calculating loss de novo.  *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006).  We will not overturn a loss calculation under the clear-error standard "unless we are left with a definite and firm conviction that a mistake has been committed."  *United States v. Crawford*,

11

407 F.3d 1174, 1177 (11th Cir. 2005) (citation and internal quotation marks omitted).  We also review the legality of a restitution order for clear error.  *United States v. Rodriguez*, 751 F.3d 1244, 1260 (11th Cir. 2014).  We review the legality of a forfeiture order de novo and the district judge's factual findings for sufficiency of the evidence.  *United States v. Hasson*, 333 F.3d 1264, 1275 (11th Cir. 2003).  Objections or arguments not raised before the district judge are reviewed for plain error.  *See Evans*, 478 F.3d at 1338.

In a case involving government benefits such as entitlement-program payments, "'loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be.'"  *United States v. Maxwell*, 579 F.3d 1282, 1306 (11th Cir. 2009) (quoting U.S.S.G. § 2B1.1 cmt. n.3(F)(ii)).  The Sentencing Guidelines provide if the judge finds the total-loss amount exceeds $3,500,000, but is less than $9,500,000, the offense level must be increased by 18 levels.  U.S.S.G. § 2B1.1(b)(1)(J).  The government bears the burden of proving the loss amount at sentencing by a preponderance of the evidence.  18 U.S.C. § 3664(e); *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).  A judge may base factual findings at sentencing on undisputed statements in a PSI or evidence presented at the sentencing hearing.  *United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006).

12

"Given the nature of [economic] crimes, the financial damage done may often be difficult to calculate with precision; consequently, the Sentencing Guidelines only require district courts to make 'a reasonable estimate of the loss.'" *United States v. Campbell*, 765 F.3d 1291, 1301 (11th Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)).  We have held the appropriate method for estimating loss is highly fact-dependent, and district judges are entitled to "considerable leeway" in approaching that task.  *Id.*  A district judge, however, is not completely unfettered in calculating the loss amount; the loss calculation must be supported with reliable and specific evidence.  *Id.*

A restitution amount must be based on the amount of loss actually caused by the defendant's conduct.  *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014).  The government must prove the restitution amount by a preponderance of the evidence.  *See* 18 U.S.C. § 3664(e).  Similar to calculation of the loss amount, we have noted "the determination of the restitution amount is by nature an inexact science."  *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010) (citation and internal quotation marks omitted).  The government need provide only a reasonable estimate of the amount owed.  *United States v. Martin*, 803 F.3d 581, 595 (11th Cir. 2015).  A restitution order may be awarded for loss caused by conduct outside the statute of limitations.  *United States v. Dickerson*, 370 F.3d 1330, 1338, 1341-42 (11th Cir. 2004).

13

The district judge held two hearings focusing almost exclusively on how to calculate the total-loss amount. The judge reasonably relied on the government's methodology, which calculated the loss amount as the difference between the total amount of food-stamp redemptions Lulseged had made over the relevant time period, minus the value of documented food-stamp-eligible inventory he had in his store over that same period, based on records from vendors and Lulseged's convenience store. This vendor-based method of calculating the total-loss amount reasonably determined the amount of benefit Lulseged received, because it accounted for the amount of food-stamp redemptions he received from the government, "value of the benefits obtained by unintended recipients," less the amount of revenue the sale of all the potential-food-stamp products he had at his store would have produced. *See Maxwell*, 579 F.3d at 1306.

Second, Lulseged's challenge to the restitution order fails, because the district judge did not clearly err in basing the restitution amount on the total-loss-amount calculations. *See Rodriguez*, 751 F.3d at 1260. The district judge made a reasonable estimate of the amount of loss Lulseged's crime caused and therefore made a reasonable estimate of the amount he owed in restitution. *See Martin*, 803 F.3d at 595; *Baldwin*, 774 F.3d at 728. On de novo review, the district judge applied a valid method of calculating the total-loss amount. *See Woodard*, 459 F.3d at 1087.

14

Finally, Lulseged did not object to the forfeiture amount at sentencing; consequently, we review that order for plain error.  *See Evans*, 478 F.3d at 1338. Because the total-loss amount and restitution amounts were reasonable, and the judge did not clearly err in those calculations, the judge did not err in calculating the forfeiture amount, which was identical to the restitution amount.

**AFFIRMED.**